# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUDY (KINNEY) MARTIN )<br>       Plaintiff )<br>    vs. )<br> )<br>STERICYCLE, INC. AND )<br>SCHERER HEALTHCARE, INC. )<br>d/b/a BIOSYSTEMS )<br>       Defendants ) | DOCKET NO:<br>1:04-cv-12027-NMG |

## JUDY (KINNEY) MARTIN'S OBJECTION, BASED ON RULE 56(F) AND OTHER REASONS, TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### I.    INTRODUCTION

Plaintiff Judy (Kinney) Martin[1] hereby opposes the Motion for Partial Summary

Judgment filed by Defendants with respect to Counts III, IV, and V in this action for the

following reasons:

1.    The Motion seeks Partial Summary Judgment on "the constructive discharge

claim in Count V" which is moot.

2.    The motion is premature with respect to the retaliation claims, Counts III and IV.

Discovery is required for Plaintiff to respond fully and appropriately.

3.    The existing record does not support summary judgment on Counts III and IV.

4.    There is no basis for summary judgment as to Constructive Discharge.

### II.    STATEMENT OF CONTESTED FACTS

---

[1]Plaintiff was known as Judy Kinney during her employment by Defendants. After leaving their employment, she married and has the married name Judy Martin. There is no relationship between Judy Martin or her husband's family and Billy Martin, the Defendants' employee whose harassment of the Plaintiff gave rise to the complaints that are the subject of this litigation. For convenience of reference, her deposition is referred to herein as "Kinney deposition."

Plaintiff was subjected to a continuous course of sexual harassment by her coworker Billy Martin from a point in time in February, 2003 through April 30, 2003. Kinney dep. pp. 99-100[2], 117-19, 121-24, 205-08. The harassment consisted variously of Martin calling her "honey" and "dear" Kinney dep. 205; telling her daily about sexual dreams he had about him and her, Kinney dep. 117-19,122, 207; telling her a couple of times a week that he wanted to kidnap her and have wild sex with her, Kinney dep. 117; brushing up against her every day, Kinney dep. 123; following her inside her truck, standing around in it while she loaded it, and brushing up against her there, Kinney dep. 205; and reaching around her from behind to touch her breasts on April 30, 2003, Kinney dep. 99-100.   It was well known among the employees that Billy Martin was harassing the Plaintiff on a regular basis.  Affidavit of Robert Loder, dated November 29, 2004.

Plaintiff informed her immediate supervisor, Joe D'Agata, (D'Agata dep. 15) about the harassment starting when it began in February and a couple of times a week thereafter until the breast touching incident. Kinney dep. 110-11, 117, 118-19, 121-24, 138-39. D'Agata told her he would "take care of it", Kinney dep. 111, 121-22. D'Agata now denies that Plaintiff made any complaints before the April 30 breast groping incident (except for an incident on April 25 when she refused to ride with Martin as assigned). D'Agata dep. 44-48.  Hence D'Agata obviously did nothing about it. Plaintiff's reporting the sexual harassment to her immediate supervisor is precisely what Defendants' policies instruct her to do. W. Martin exhibit 4, p. 12; Kinney dep. 138-39 and exhibit 10.

Following the April 30 incident, D'Agata sent Plaintiff to higher level managers.

---

[2]Depositions and deposition exhibits were filed with Defendants' Motion for Partial Summary Judgment, and are referred to herein without refiling additional copies.

D'Agata's supervisor, Phil Davis laughed every time he met with Plaintiff to talk about the incident. Kinney dep. 195-96. Davis's supervisor, Rich Salmonsen, met with Plaintiff and was told about her talking to D'Agata repeatedly about the harassment. Kinney dep. 159. He promised to provide her with a form to file a complaint, but never did so. Kinney dep. 164. Plaintiff also met with Defendants' assigned human resource person, Marlynn Cohen, and told her of the ongoing course of sexual harassment and her ongoing complaints to D'Agata. Kinney dep. 175; Cohen dep. 44.

The corporate response, after months of sexual harassment had been duly and repeatedly reported by Plaintiff to her supervisor and had culminated in the breast groping incident which finally provoked a management response, was to reschedule the harasser Martin to come in a half hour earlier to reduce overlap with Plaintiff in the workplace before they both left for the day on truck routes. While this ended Martin's direct physical and verbal sexual aggression toward Plaintiff, Martin was not actually removed from proximity with the Plaintiff and continued his campaign of intimidation and harassment. At least two days per week Plaintiff encountered him in the workplace. When this occurred, he would stare or leer at her the whole time. She reported these continued encounters and how upsetting they were to her to management during discussions about the fact that their proposed response to the harassment was not working. Management's response was to indicate that they had sufficiently remedied the problem. Nothing further was done to curtail Martin's continued harassment of the Plaintiff. Affidavit of Judy Martin, dated December 23, 2004 ("Plaintiff's Affidavit"), at ¶ 3. *See* Kinney dep. 152, 169, 171.

Kinney was told by the union steward, a Mr. Caldwell, that this wasn't the first time Martin had harassed women and that he had done it to a woman named Mindy. Kinney dep. 96-

3

97, 232-33. Kinney did not grieve the matter with the union because Caldwell told her that the union wanted the company to take care of it. Kinney dep.114-15. Kinney felt unsafe in the workplace. Kinney dep. 202 and exhibit 8.

When Plaintiff concluded that she could not continue to work in the same workplace as Martin under these conditions, Cohen told her she was being unreasonable. Kinney dep. 176, 193. "It just seemed like they were all for him." Kinney dep. 193. Kinney determined that she would have to leave employment but waited a period of time to see if the company would take action against Martin. Kinney dep. 202-04. When it did not, she left.

Plaintiff filed a formal complaint with the Massachusetts Commission Against Discrimination on June 2, 2003; the record is silent as to when Defendants learned of the filing, a fact that is the subject of ongoing discovery.

Shortly before leaving employment, Plaintiff sought vacation time for medical purposes. She was told by her immediate supervisor, D'Agata, that she could have the vacation time she sought, and that the practice was to allow it to workers, Kinney dep. 220-21. There was no discussion at the time as to whether the vacation time requested would be paid or unpaid. Plaintiff would have taken unpaid leave had that been offered as an alternative. Plaintiff's Affidavit, at ¶ 5.

Despite D'Agata's assurance that she could have the vacation time she sought, Plaintiff was denied vacation on June 12, 2003 by D'Agata's superior, Phil Davis. The denial of vacation time for medical purposes to Plaintiff occurred after months of complaining about harassment, after she caused D'Agata, Davis, Salmonsen and Cohen to become involved in dealing with her complaints, and after the filing of a complaint with the MCAD, see references supra.

4

Plaintiff's harasser, Billy Martin, was allowed to take time during his first year of employment, although he testified that he had to take it unpaid because he had not accumulated any time. Martin dep. 68-69. Judy Martin did have accumulated vacation time, Kinney dep. pp. 223-24, and W. Martin exhibit 4, p. 24, although she was still in her first year. The understanding of Plaintiff, her supervisor, and her harasser, that vacation time was permitted during the first year but taken against the second year's entitlement, is a policy set forth explicitly in Exhibit 4 to the Martin deposition, the Stericycle Employee Handbook, which states on p. 24:

> "You can take up to one week's vacation after six (6) months but you will be borrowing from next year's vacation time to be used."

The handbook gives an example of exactly this which would have covered Plaintiff on p. 25.

Martin, a union employee, testified that he had a copy of this document and that it contained "terms and conditions relating to your (his) employment." Martin dep. 59-60. He did not have the union contract although a copy was apparently available for viewing in his supervisor's office if he desired. Martin dep. 60-61.

It is also believed that union employees were regularly allowed to take leave during their first year of employment, in accordance with the terms of the employee handbook. This, too, is the subject of ongoing discovery.

**III.    THE MOTION FOR SUMMARY JUDGMENT IS MOOT AS TO COUNT V.**

Count V is a claim for gender discrimination based on disparate treatment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. It was voluntarily dismissed by the Plaintiff by a Rule 41(a) motion filed and entered 11/24/04, docket entry no. 9. To the extent the motion may have intended to address Plaintiff's state common law wrongful discharge

claim, Count VIII, this has also been voluntarily dismissed by a Rule 41(a) motion filed 11/23/04,

amended 11/29/04, docket entries 8 and 10.  The Defendants' motion is simply moot as to these

counts and should not require further briefing herein.

To avoid confusion and because the Plaintiff clearly does claim that she was constructively

discharged for purposes of asserting a claim for front and backpay in Counts I and II of the

Complaint, Plaintiff has responded to Defendants' argument in section VI of this memorandum.

**IV.  THE MOTION FOR SUMMARY JUDGMENT IS PREMATURE WITH RESPECT TO THE RETALIATION CLAIMS, COUNTS III AND IV. DISCOVERY IS REQUIRED FOR THE PLAINTIFF TO RESPOND FULLY AND APPROPRIATELY.**

Rule 56(f) of the Federal Rules of Civil Procedure provides:

**(f) When Affidavits are Unavailable.**  Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Trial courts should refrain from entertaining summary judgment motions until after the

parties have had a sufficient opportunity to conduct necessary discovery.  See Velez v. Awning

Windows, Inc., 375, F.3d 35, 39 (1st Cir. 2004), *citing* Carmona v. Toledo, 215 F.3d 124, 132-33,

135-36 (1st Cir. 1996).  It follows that when a party moves for summary judgment, the opposing

party must be afforded a fair chance to obtain and synthesize available information before being

required to file an opposition.  Id.  A party who legitimately requires more time to oppose a

motion for summary judgment has a responsibility to make the court aware of its plight.  Id.

Typically, this is accomplished by way of either a Rule 56(f) motion or its functional equivalent.

Velez, 375 F.3d at 39-40, *citing* Vargas-Ruiz v. Golden Arch Dev., Inc., 368 F.3d 1, 3-4 (1st Cir.

2004); Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 44 (1st Cir. 2001).

Counts III and IV turn on the issue of whether or not the denial of vacation time off for medical purposes to Plaintiff in June of 2003, after her complaints of sexual harassment, was retaliatory and the Defendants' rationale pretextual, or whether there was a legitimate non-discriminatory reason. While the Plaintiff believes there is a sufficient record to deny the Motion for Partial Summary Judgment now, see section V *infra*, there is further information that is the subject of pending discovery that may provide additional reasons to deny the Motion:

1.    Interrogatory 9 of pending interrogatories to each Defendant asks:

"Please identify all union employees who have, during the time period January 1, 1998 to date, been allowed during their first year of employment to borrow vacation time against the following year's vacation."

2.    Interrogatory 10 of pending interrogatories to each Defendant asks:

"Please identify the date when you first learned of Judy Martin's complaint to the Massachusetts Commission Against Discrimination."

3.    Request no. 9 of pending Requests for Production of Documents to each Defendant asks for production of:

"All documents that evidence your answer to Interrogatory 10 of Plaintiff's First Set of Interrogatories to Defendants."

Other interrogatories request the identity of other employees of the Defendants, some of whom may have information that will further Plaintiff's response to this issue.

The affidavit of Plaintiff's counsel, Richard B. Couser, attached hereto, meets the requirements of Rule 5(f) as to the need for further discovery on this issue.

**V.    THE EXISTING RECORD DOES NOT SUPPORT SUMMARY JUDGMENT AS TO COUNTS III AND IV**.

Summary judgment, pursuant to Fed.R.Civ.Pro. 56(c), may be granted only where a review of all of the facts, taken in the light most favorable to the non-moving party, indicates that there is no genuine issue as to a material fact and that the moving party is entitled to a judgment as a matter of law. *Calero-Cerezo v. United States Dept. of Justice*, 355 F.3d 6, 24-25 (1st Cir. 2004). To defeat a motion for summary judgment, the Plaintiff need not rely on uncontradicted evidence. Rather, in situations where there is conflicting evidence, so long as the Plaintiff's evidence is "cognizable and sufficiently strong to support a verdict in her favor, the fact finder must be allowed to determine which version of the facts is most compelling" at trial. *Id.* at 26.

Counts III and IV state retaliation claims under federal (Count III) and state (Count IV) law. The essence of the claim is that Plaintiff was refused the opportunity to take vacation time against accrued time for medical purposes when she requested it, despite the fact that other union employees who were similarly situated to Plaintiff had been allowed to take such time, that the refusal occurred after she had complained about sexual harassment, and that the denial was retaliatory.

In order to establish a *prima facie* retaliation claim under Title VII, Plaintiff must show (1) that she engaged in a protected activity as an employee; (2) that the employer took an adverse action against her; and (3) that there was a causal relationship between the adverse action and the Plaintiff's protected activity. *Calero-Cerezo v. United States Dept. of Justice*, 355 F.3d 6, 44 (1st Cir. 2004). Once the employee establishes such a *prima facie* case, the courts apply the burden shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to shift the burden of proof to the employer to articulate a legitimate, non-retaliatory motive for the adverse action. *Id.* at 46-47. If the employer does so, the burden shifts again to the Plaintiff to

show "that the proffered legitimate reason is in fact a pretext and that the job action was the result of the Defendants' retaliatory animus." *Id.* at 47.

A.     **Plaintiff's *Prima Facie* Case Withstands Scrutiny.**

The First Circuit has described the *prima facie* case as a "small showing, . . . that is not onerous." *Kosereis v. State of Rhode Island Dept. For Children, Youth & Families*, 331 F.3d 207 (1st Cir. 2003) (deciding a disparate treatment claim involving a *McDonnell Douglas* burden shifting analysis).  The Plaintiff meets her burden to present evidence relating to each of the elements of the *prima facie* case:  Plaintiff plainly engaged in protected conduct, i.e. opposing workplace sexual harassment. She experienced an adverse employment action in the denial of vacation time for her medical procedure, an entitlement under the Employee Handbook as well as a custom in the company. The timing of the denial indicates its relationship to her protected conduct.

Defendants apparently concede, as they must, that at the time of the vacation-pay denial, Plaintiff was engaged in a protected activity: she had reported her claims of sexual harassment both to her employer and to the MCAD.  Thus, Plaintiff easily meets the first prong of the *prima facie* case.  *See Calero-Cerezo*, 355 F.3d at 44.  Moreover, given the close nexus in time between Plaintiff's ongoing complaints to her employer and to the MCAD and the denial of the vacation time, Plaintiff also easily meets the third prong of the *prima facie* test.  *Id.* at 46; *see also Mole v. University of Massachusetts*, 442 Mass. 582, 814 N.E.2d 329 (2004) (if an adverse action is taken immediately following employee's protected activity, an inference of causation is permissible). Rather, Defendants sole argument relating to Plaintiff's *prima facie* case is that the denial of vacation time does not constitute a sufficiently adverse action to qualify for a claim for retaliation

under Title VII or M.G.L.c. 151B.

The language of Title VII, in forbidding both discrimination as a result of protected activity as well as discriminatory treatment with respect to "compensation, terms, conditions, or privileges of employment" is open-ended in nature. *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir. 1997). "It obviously includes opportunities that are not strictly entitlements." *Id.* (noting that where transfers for hardship reasons were routinely granted by employer, they arguably became a "privilege"of employment); *see Blackie v. Maine*, 75 F.3d 716, 725 (1st Cir. 1996) (in order to constitute an "adverse employment action" sufficient for a retaliation claim under Title VII, a Plaintiff must show that the employer took a materially adverse employment action, such as withholding from the employee "an accouterment of the employment relationship, say by failing to follow a customary practice of considering her for promotion after a particular period of service").

Under Massachusetts law, the standard is slightly different. Massachusetts law requires that the action disadvantaged the Plaintiff "with respect to objective terms and conditions of employment, as opposed to mere subjective feelings of disappointment and disillusionment." *Wong v. City of Cambridge,* 16 Mass.L.Rep. 48, slip op. at 15-16 (Mass. Super. 2003).

Defendants cite two cases to support its contention that the denial of leave time to Plaintiff did not constitute a materially adverse action sufficient to ground liability for retaliation.[3] These cases, however, deal with the mere *scheduling* of vacation days, not with a complete denial of any opportunity to take vacation days for a medical procedure for a five-month period. *See Wynn*, 301

---

[3]*See* Defendants' Memorandum, page 14, *citing Wynn v. Paragon Systems, Inc.*, 301 F.Supp.2d 1343 (S.D.Ga. 2004), and *Hunter v. St. Francis Hosp.*, 281 F.Supp.2d 534 (E.D.N.Y. 2003).

F.Supp.2d at 1354; *Hunter*, 281 F.Supp.2d at 544.  Moreover, as the courts in each of the cited cases found, the employer's reason for denying the requested vacation schedule was truly non-pretextual: in each case, the particular days requested had already been granted to a different employee. *Wynn*, 301 F.Supp.2d at 1354-55; *Hunter*, 281 F.Supp.2d at 544-45.  Thus, these cases are simply inapposite.

Other courts have held that a denial of the right to take vacation time may constitute an adverse employment action. *See Coffman v. Tracker Marine, L.P.*, 141 F.3d 1241 (8th Cir. 1998) (denial of vacation days "easily qualifies as an adverse employment action because it was a material change in one of [the Plaintiff's] existing employment benefits"); *Richardson v. Metro Dist. Comm'n*, 2003 U.S.Dist. Lexis 12757 (D.Conn. 2003) (denial of vacation day for religious purposes where such leave had been granted on past occasions prior to sexual harassment complaint); *Wu v. Southeast-Atlantic Bev. Corp.*, 2003 U.S.Dist. Lexis 25828, slip op. at 43, and n.5 (N.D.Ga. 2003) (assumes that denial of vacation request constitutes an adverse employment action, stating: "It is important that the threshold of what constitutes an adverse employment action not be elevated artificially . . . [because this] would undermine the purposes of the statute by permitting discriminatory actions to escape scrutiny.").

As noted above, this is not a situation in which Plaintiff's mere scheduling request was denied.  This is instead a situation in which her entire ability to take time off for a medical procedure was denied.  This is a right provided for in the employee handbook, and one that was routinely granted to other similarly situated union employees in their first year of employment.[4]

---

[4]As indicated in section III, Plaintiff has requested documents from Defendants that Plaintiff believes will further support this contention that others similarly situated were granted vacation leave.

Plaintiff made clear that her request was based upon her need to have a medical procedure. Yet, unlike Billy Martin, Plaintiff was not offered the opportunity to take unpaid leave. Nor was she offered the opportunity to take sick leave or personal time as an alternative. Rather, her request for leave was denied, and she was told she would have to wait five more months to take any vacation time. This constituted a material change to the terms and conditions of Plaintiff's employment, and thus constitutes an adverse employment action for purposes of both Title VII and M.G.L.c. 151B.

> **B.    The Evidence Discovered to Date Suggests that Defendants' Purported Reasons for the Denial are Pretextual.**

Defendants contend as their legitimate reason for denying Plaintiff vacation leave that the Union contract covering Plaintiff and Martin did not allow for vacation in the first year, credited against the second year. Defendants' Memorandum pp. 8, 14. Because this justification, taken at face value, appears legitimate, the burden shifts to Plaintiff to demonstrate that Defendants' proffered reason is a mere pretext, and that their real motive in denying Plaintiff's request for time off for a medical procedure was the result of discriminatory animus. *See Chungchi Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 39 (1st Cir. 2003). "Evidence that the employer's stated reasons are pretextual can be sufficient for a jury to infer discriminatory animus." *Id.*

As the First Circuit has stated,

[T]here is no mechanical procedure for finding pretext. *Feliciano de la Cruz [v. El Conquistador Resort & Country* Club, 218 F.3d 1, 6 (1st Cir. 2000)]. It is the type of inquiry where "everything depends on individual facts." *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 57 (1st Cir. 999) (citation and quotation marks omitted). As such, we have been "particularly cautious" about taking such questions out of the jury's hands. *Hodgens [v. Gen. Dynamics Corp.,* 144 F.3d 151, 167 (1st Cir. 1998)]; *see also Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 34 (1st Cir. 1990) ("This court has consistently held that determinations of motive and intent, particularly in discrimination cases, are questions

better suited for the jury, as proof is generally based on inferences that must be drawn, rather on the proverbial "smoking gun." (citations and quotation marks omitted)).

*Chunchi Che*, 342 F.3d at 39. That said, pretext can be proven in several different ways. *Id., citing Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir. 2000). "One way is by presenting evidence of disparate treatment." *Chungchi Che*, 342 F.3d at 39 (noting that the evidence showed that others similarly situated to the Plaintiff and who engaged in similar behavior were not disciplined, while the Plaintiff was disciplined). Another way to show pretext is "by showing that the employer's proffered explanation is unworthy of credence," such as when the adverse action contravenes the employer's own policies, statements and previous behavior such that a jury may conclude that the stated reason for the adverse action was contrived. *See id.* See also *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46,56 (1st Cir. 2000) (inference of pretext where "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a fact finder could infer that the employer did not act for the asserted non-discriminatory reasons.").

In the instant case, the evidence discovered to date shows both that the Plaintiff was treated differently from others similarly situated and that Defendants' stated reasons are unworthy of credence. The basis for such an inference arises because:

- The adverse employment action occurred after months of sexual harassment of Plaintiff and complaints by Plaintiff about the harassment, with no response, and then ineffectual response, by Defendants, and after Plaintiff had filed a complaint with the MCAD;
- The adverse employment action contravened Plaintiff's rights as expressed in Defendants' Employee Handbook, which specifically states that employees are able to take up to one week of vacation time following six months of employment, to be credited against their earned time in the next year. W. Martin Exhibit 4, p. 24.

13

- Defendants knew that Plaintiff sought the time off for a medical procedure. The Employee Handbook also specifically allows time off of work during the first (or any year) of employment for sick leave and personal time, and yet Plaintiff was not offered the opportunity to take the requested time as sick leave or personal time. *Id* at p. 27-28;

- The adverse employment action contravened Defendants' normal employment practices, as expressed to her by her supervisor, Mr. D'Agata, when Plaintiff requested the leave time;

- The adverse employment action contravened treatment of another union employee who happened to be Plaintiff's harrasser, and it is believed that it contravened the routine practice of granting such leave to others similarly situated, although this is still the subject of discovery requests.

Given that Defendants' supposedly non-discriminatory reason for the adverse employment action is in fact a breach of its own Employee Handbook and its admitted custom and practice, a jury could certainly find that the proffered reason for the denial was pretextual. Thus, summary judgment on this matter should be denied.

## VI.    THERE IS NO BASIS FOR SUMMARY JUDGMENT AS TO "CONSTRUCTIVE DISCHARGE."

As noted above, the Motion is moot as to Counts V and VIII. Defendants have moved herein to dismiss constructive discharge only as to Count V. However, Plaintiff clearly does claim that she was constructively discharged, and seeks both back and front pay resulting from this constructive discharge in Counts I and II. As a result, Defendants' arguments are addressed.

In order to prevail on her constructive discharge claim, the Plaintiff must show that "her working conditions were so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign. . . . The standard is an objective one; it cannot be triggered solely by the employee's beliefs, no matter how sincerely held." *Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 46 (1st Cir. 2002) (internal quotations and citations omitted). In making a determination on this

14

issue, the employer's response to complaints of harassment are relevant. "An employee's assessment of whether she can remain at work while pursuing remedies for the harassment she has endured obviously will be affected by the likelihood that the harassment will continue unabated." *Id.* A claim of constructive discharge is not based upon just the facts that occur *after* an employer's response to complaints relating to harassment. Rather, this claim depends upon the totality of the Plaintiff's experience in the workplace. *Id.* at 50.

> **A.    Defendants response to Plaintiff's complaints was neither prompt nor effective.**

The premise of Defendants' argument is that Plaintiff's first complaints occurred on April 30. This is not Plaintiff's testimony. Her testimony is that her complaints began in February, and by April 30, she had suffered more than two months of virtually daily harassment, both verbal and physical, which had been ignored and unremediated by Defendants despite her ongoing complaints to her supervisor. This is not prompt action.

The response was also ineffective. On paper, it created a half hour separation between Plaintiff and the harasser intended to get the harasser on the road in the morning before Plaintiff arrived. In reality, their paths still crossed all the time. The harasser was still at the warehouse when she arrived, they passed each other at work, and he stood at a distance and stared at her. This ongoing intimidation demonstrates that Plaintiff had not been freed from the harassment at all. The harasser who had gotten away with his conduct for months despite the supervisor's knowledge of it, was still there with the same supervisor with a minor and ineffective schedule adjustment as the only proferred remedy. In addition, when Plaintiff complained that the remedy was ineffective, and that Billy Martin continued to harass her, no further action was taken.

It is also clear that one of the reasons, at least, for lack of action was that the Defendants chose not to believe the Plaintiff's allegations. D'Agata, the supervisor who ignored the complaints, acknowledged that, although he knew of no reason she would misrepresent the matter, he reached no personal opinion on whether the harassment happened or not. D'Agata dep.73-75. Cohen, the area Vice President of Human Resources for the Defendants, chose to disbelieve Plaintiff for no more apparent reason than that Martin denied the allegations. Cohen dep. 63 (". . . I (told Plaintiff) I looked into the two allegations she made and I didn't find that they were credible.") When asked if it would be cause for termination if Martin had "reached around and touched her breast deliberately", Cohen was unable to answer the question but added: "why are we talking about it? He didn't".[5] Thus Plaintiff was working in an atmosphere in which the area head of human resources was unwilling to acknowledge that the deliberate groping of the breasts of a female employee by a male employee was grounds for discharge, and chose to affirmatively disbelieve the female employee's allegation rather than treat it with the seriousness it deserved. Plaintiff was absolutely correct, even by Defendants' admissions, when she stated that "It just seemed like they were all for him." Kinney dep. 193.

**B.    Plaintiff's testimony as to her reasons for quitting were not based on her vacation request.**

Defendants, in their memo at p. 11, misrepresent Plaintiff's reasons for her resignation. They state it was because of the denial of her vacation request, not the inadequacy of Defendants' response to her months of harassment complaints, citing Kinney dep. 134. The reference merely

---

[5]Unfortunately for Defendants' case, denial does not constitute a remedy to harassment. *Fuller v. City of Oakland*, 47 F.3d 1522 (9th Cir. 1995) (finding that where employer's response was to find that no harassment had occurred, it could not be said to have remedied the situation).

includes Plaintiff's testimony that she claimed retaliation based on the denial of her vacation request and does not support Defendants' claim that this was the sole reason for her resignation. She testified at length that the reason for her resignation was that the Defendants would not discharge the harasser who continued to be a presence threatening her safety in the workplace. Kinney dep. 198, 202-04. While the denial of vacation time added to the burden of tolerating sexual harassment, and the presence of the harasser, that Defendants had loaded on Plaintiff for four months at the time of her resignation, it has never been claimed to be the only reason she left.

However, the retaliatory refusal to allow Plaintiff to take vacation leave must still be considered in relationship to her constructive discharge claim, since this claim takes into account all of the circumstances of the employment situation. *Marrero*, 304 F.3d at 49-50 (taking into account evidence relating to employee's transfer and non-sexual conduct of new supervisors in determining reasonableness of Plaintiff's resignation); *see also O'Rourke v. City of Providence*, 235 F.3d 713, 730 (noting that courts should avoid dis-aggregating hostile work environment claim, dividing conduct into instances of sexually-oriented conduct and instances of unequal treatment, and then discounting the latter category of conduct; this latter conduct is admissible as hostile environment evidence).

**C.      There is a material question of fact as to whether Kinney's working conditions were so difficult or unpleasant that a reasonable person in her position would have felt compelled to resign.**

Defendants claim that Billy Martin's staring at Plaintiff, without more, is simply insufficient as a matter of law to make the working conditions so intolerable that a reasonable person would feel compelled to resign. This argument ignores both the facts and relevant law.

As noted above, a constructive discharge claim does not rest just upon facts that occur

17

after an employer acts. Rather, it rests upon the totality of the Plaintiff's experience at her job. *Marrero*, 304 F.3d at 50. Thus, a review of a constructive discharge claim looks at all of the evidence of harassment that has gone on, as well as the employer's response to it, in determining whether an employee's decision to leave her employment is reasonable. Moreover, as the *Marrero* court recognized, a preceding period of sexual harassment undoubtedly colors an individual's perception of ongoing events in the workplace "as it would for any reasonable employee in her position." *Marrero*, 304 F.3d at 40 (noting that even with regard to retaliation claim which is limited in time to the period after employee engaged in protected conduct of reporting harassment, the court looks at the events not in a vacuum but in light of all that came before because prior events color the perceptions of the reasonable person in the Plaintiff's shoes). This is particularly true with regard to harassing conduct by the same perpetrator: given a history of harassment, "it would not be unreasonable for [a Plaintiff] to find [the same perpetrator's] taunting especially offensive," particularly where there is evidence that the employer is aware of the ongoing conduct. *Marrero*, 304 F.3d at 42 (finding that there was insufficient time and activity after the protected conduct to make out a claim for retaliatory harassment, but sufficient evidence to show constructive discharge).

In *Marrero*, as in the instant case, the Plaintiff had suffered harassment, and had complained about it to her superiors, for a long period before the employer acted. *Marrero*, 304 F.3d at 48. Once the employer finally took action, it was to remove the perpetrator as her direct supervisor and to move her work station. However, in the three days that the Plaintiff there remained on the job, she still had to interact with the perpetrator, who continued to harass her, although her contact with him was intermittent. The court held that, given the long history of

harassment and the frequent complaints, and the inadequacy of the transfer as a remedy against further harassment, the Plaintiff reasonably believed that the conditions of her employment would not change and that she could anticipate continued harassment unless she left work. *Id.* at 47-48.

In addition, a number of cases have found that staring which continues *after* an employer has supposedly remedied the harassment situation is enough to create a continued hostile environment. In *Homesley v. Freightliner Corp.*, 2003 U.S.App. Lexis 7545, slip op. at 21-22 (4th Cir. 2003), the court upheld a jury verdict in favor of the Plaintiff on hostile environment claim where the evidence demonstrated that the employer's solution to the harassment did not prevent the perpetrator's continued stalking and staring at the Plaintiff, and left the perpetrator in a place to continue to intimidate the Plaintiff. Similarly, in *Birchstein v. New United Motor Mfg.*, 92 Cal.App.4th 994 (Cal.App. 2001) *review denied*, 2002 Cal. Lexis 288(Cal. Jan. 16, 2002) the appeals court upheld a jury verdict for the Plaintiff, finding that a continued campaign of staring, particularly where it follows other types of sexual harassment and the reporting thereof, was sufficient to constitute sexual harassment. *Id.* at 1002 (holding the continued staring campaign sufficient to state a claim for liability for retaliation). *See also Hirase-Doi v. U.S. West Communs., Inc.*, 61 F.3d 777, 784, n.3 (10th Cir. 1995) (Court rejects employer's argument that after initial complaint and employer response, subsequent complaints were only for threatening stares, not for sexual harassment, and finds that the alleged staring was sufficiently related to the earlier harassment to constitute continuing harassment in violation of Title VII).

In the instant case, Plaintiff had been exposed to several months of verbal and physical sexual harassment. Defendants utterly failed to respond to these complaints for more than two months, until the breast-groping incident of April 30. Thereafter, Defendants had made an

ineffectual attempt to separate the two employees, leaving Plaintiff still in a situation where she was in the harasser's presence at least twice a week, and subject to his stares and leers, which intimidated her and caused her to continue to feel unsafe in the workplace. When Plaintiff complained about the continuing to harassment, she was told that those in management felt as though they had taken sufficient steps to remedy the problem, and nothing further was done. Moreover, Defendants, having ignored her complaints for months, made it clear they disbelieved her allegations at the end. Plaintiff reasonably and correctly felt disbelieved, unprotected, and at risk in the workplace. Under these conditions, her resignation was objectively reasonable.

## **CONCLUSION**

WHEREFORE, Plaintiff prays that the Honorable Court deny the Defendants' Motion for Partial Summary Judgment as to Plaintiff's Retaliation Claims (Counts III & IV) and Her Constructive Discharge Claim (Count V).

Respectfully submitted,

JUDY (KINNEY) MARTIN

By Her Attorneys:
D'Amante Couser Steiner Pellerin, P.A.

Dated: December 29, 2004        _____/s/  Richard B. Couser_____
Richard B. Couser (BBO: 645543)
D'Amante Couser Steiner Pellerin, PA
Nine Triangle Park Drive; P.O. Box 2650
Concord, NH  03302-2650
(603)-224-6777