United States District Court
District of Massachusetts

```
_____
                               )
JUDY (KINNY) MARTIN,           )
                               )
        Plaintiff,             )
                               )   Civil Action No.
        v.                     )   04-12027-NMG
                               )
STERICYCLE, INC. and SCHERER   )
HEALTHCARE, INC. d/b/a         )
BIOSYSTEMS,                    )
                               )
        Defendants.            )
_____)
```

MEMORANDUM & ORDER

GORTON, J.

The present case arises from an allegation of sexual harassment by plaintiff, Judy (Kinny) Martin ("Martin"), against Stericycle, Inc. ("Stericycle") and Scherer Healthcare, Inc., d/b/a Biosystems ("BioSystems"). Defendants now move for summary judgment with respect to plaintiff's claims of retaliation (Counts III and IV of the complaint).

I. Background

On November 27, 2002, Kinney began working as a route driver at the Haverhill, MA facility of BioSystems. In January, 2003, Stericycle acquired BioSystems. At all times during Kinney's employment, Teamsters Local 170 represented Kinney and the Local's collective bargaining agreement with BioSystems ("the

-1-

CBA") governed Kinney's employment.

From February, 2003 until April 30, 2003, Kinney was allegedly subjected to continual acts of sexual harassment from her co-worker, Billy Martin ("Martin"). Kinney reported the harassment to her supervisor and defendants responded by ordering Martin to arrive at work one half hour ahead of Kinney to avoid her at the workplace. Kinney claims that the harassment continued even after defendants altered Martin's starting time. Eventually Kinney determined that she could no longer work with Martin and confronted Marlynn Cohen ("Cohen"), the Human Resources employee assigned to the case, about discharging Martin. Defendants declined to discharge him.

On June 2, 2003, Kinney filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD"). Shortly thereafter, she sought to take vacation time for medical purposes. Kinney's immediate supervisor, Joe D'Agata ("D'Agata"), told Kinney that she had not accrued any vacation time but suggested that she could borrow against the following year's vacation. Kinney claims that she expected defendants would grant her leave because Kinney claims that other employees, including Martin, had been granted leave during their first year. Apparently, D'Agata's suggestion was based upon the Stericycle Employee Handbook which states "[y]ou can take up to one week's vacation after six (6) months but you will be borrowing from next

year's vacation time to be used".

Because Kinney was a union employee, however, the Handbook was inapplicable to her insofar as it conflicted with the CBA, § 6 which provides that employees are ineligible for paid vacation until they have been employed for one year. On June 12, 2003, Phil Davis ("Davis"), D'Agata's superior, denied Kinney's request for vacation, allegedly pursuant to the CBA. Kinney resigned shortly thereafter.

On September 20, 2004, Kinney filed the instant law suit alleging claims for gender discrimination (Counts I and II) and retaliation based upon the denial of her request for vacation time (Counts III and IV). Other claims were alleged but have since been voluntarily dismissed. On December 7, 2004, defendants moved for summary judgment with respect to counts III and IV. They argue that Kinney cannot establish that 1) she was subjected to an adverse employment action or 2) defendants' reason for denying her request for vacation was a pretext for retaliation.

## II. Legal Analysis

### A. Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. General Elec. Co., 950 F.2d 816, 822

(1st Cir. 1991)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

**B.   Analysis**

To prove a claim of retaliation, a plaintiff must satisfy the elements of the McDonnell Douglas burden shifting test. Weston-Smith v. Cooley Dickinson Hosp., Inc., 282 F.3d 60, 64 (1st Cir. 2002). The initial burden is on the plaintiff to establish a prima facie presumption of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To do so, a plaintiff must establish that: 1) she engaged in protected conduct, 2) she experienced adverse employment action and 3) there was a causal connection between the protected conduct and the adverse employment action. Benoit v. Technical Mfg. Corp., 331 F.3d 166, 175 (1st Cir. 2003).

The parties agree that Kinney's report to MCAD constitutes the engagement in protected conduct satisfying the first element of her prima facie case. It is also undisputed that, given the short time between Kinney's complaint and the denial of vacation time, the third element is satisfied. The only question is whether the denial of vacation time constituted an adverse employment action. For that element to be present:

> [t]ypically, the employer must either (1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities or (2) withhold from the employee an accouterment of the employment relationship....

Blackie v. State of Me., 75 F.3d 716, 725 (1st Cir. 1996). The

First Circuit Court of Appeals has cautioned that:

> [w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action.

Id.

Defendants argue that nothing was "withheld" or "taken" from Kinney when her request was denied because, under the CBA, she was not yet entitled to take vacation time. Plaintiff responds that the right to take vacation time "is ... provided for in the handbook, and one that was routinely granted to other similarly situated union employees in their first year of employment". She also criticizes the defendants for failing to offer her unpaid leave when they denied her request for vacation.

Defendants' argument prevails. By the terms of the CBA, Kinney was not entitled to take vacation time. The Employee Handbook, which contains an inconsistent statement, was inapplicable to her (insofar as it conflicted the CBA) because she was a union employee. There should have been no confusion about the matter because the cover of the Employee Handbook states in large print that "[s]ome benefits may not apply to union employees and in some cases these policies maybe [sic] impacted by collective bargaining agreements". There is also no allegation that anyone misled her with respect to which document would govern. Therefore, Kinney was not entitled to take vacation time and defendants' denial of her request did not

deprive her of anything to which she was entitled.

Perhaps, in principle, Kinney could prove an adverse employment action by demonstrating that, notwithstanding the CBA, there was a "de facto" policy of allowing union employees to take vacation during their first years. That contention would fail in this case, however, because plaintiff has offered no evidence that any union employee was ever allowed to take paid vacation time during his/her first year. In arguing that other employees were permitted to take <u>unpaid</u> time off, plaintiff mixes apples and oranges. The relevant provision of the CBA does not preclude a first-year employee from taking unpaid leave, only paid vacation. There is no evidence that first-year union employees were ever permitted paid vacation and there is, therefore, no evidence of a "de facto" policy in contravention of the CBA.

Realizing her evidentiary shortcoming, in her opposition (filed December 29, 2004), Kinney requests that the Court grant her additional discovery under Fed.R.Civ.P. 56(f) before addressing defendants' motion for summary judgment. In particular, she states that the following interrogatory was outstanding:

> [p]lease identify all union employees who have, during the time period January 1, 1998 to date, been allowed during their first year of employment to borrow vacation time against the following year's vacation.

Additional discovery on that issue is, however, futile because

the answer to that interrogatory is already clear.

In his Declaration, Phil Davis states that no union member has ever been allowed to take vacation time during his/her first year of employment. In their reply brief, defendants reaffirm that such will be their response to plaintiff's interrogatory.[1] There is no evidence to the contrary and no suggestion that any could emerge. Accordingly, Kinney has failed to marshal sufficient evidence to raise a genuine issue of material fact with respect to whether she was entitled to take paid vacation time. Because she has not, the denial of her request was not an adverse employment action.

Kinney also asserts that she suffered an adverse employment action because defendants denied her the opportunity to take unpaid leave. That argument is unavailing because Kinney never requested it. She requested a paid vacation. At the time of her request, Kinney was undoubtedly aware that she could have requested unpaid leave because she had previously done so and been granted it on May 30, 2003. Kinney cannot now claim that the defendants acted improperly by failing to grant a privilege that was never sought.

Finally, it bears noting that the cases cited by plaintiff

---

[1] Although Davis may have limited knowledge of the practices of other managers at Stericycle, because this is a claim of retaliation and he is the person who denied Kinney's request, only his past practices are relevant.

for the proposition that "denial of the right to vacation time may constitute an adverse employment action" do not strengthen her cause. In <u>Coffman</u> v. <u>Tracker Marine, L.P.</u>, 141 F.3d 1241, 1245 (8th Cir. 1998), the plaintiff had explicitly bargained for and received the right to take federal holidays off with pay. Until shortly before resigning, she had, in fact, taken all such days and, therefore, when the employer began to deprive her of them, the terms of her employment had clearly changed. <u>Id.</u> In the instant case, plaintiff had neither bargained for nor previously taken paid vacation time.

In <u>Richardson</u> v. <u>Metro Dist. Comm'n</u>, 2003 U.S.Dist. Lexis 12757 (D.Conn. 2003), the Court found that an employee had suffered an adverse employment action based upon "denial of step increases [in salary] on two occasions, the reassignment of her job responsibilities, and the denial of a vacation day to attend, and suspension for attending, a religious convention". The court did not hold that the denial of vacation time, without more, constitutes an adverse employment action and the case contains no suggestion that it could. <u>See id.</u> Moreover, the supervisor in that case rescinded the vacation day after he had previously approved it and, apparently, where company policy would have permitted the vacation.

In <u>Wu</u> v. <u>Southeast-Atlantic Bev. Corp.</u>, 2003 U.S.Dist. Lexis 25828 (N.D.Ga. 2003), the Court did not address whether a denial

of vacation time could constitute an adverse employment action because it held that plaintiff could not establish the pretext prong of the McDonnell-Douglas test. Id. ("[b]ecause the court finds that plaintiff has not demonstrated pretext, the court will assume, for purposes of summary judgment, that [defendant's] denial of [plaintiff's] request for vacation time qualifies as an adverse employment action"). In any event, in Wu the plaintiff had earned vacation time before his request was denied. Precisely the opposite is true here.

Plaintiff cites no authority in which a court has held that an employer's decision to deny vacation time to an employee who had not yet earned any in accordance with a written policy could constitute an adverse employment action. Because plaintiff cannot prove that any privilege or right to which she was entitled was "taken" or "withheld" from her, defendants' motion for summary judgment will be allowed. Defendants motion for summary judgment with respect to Count V will be denied as moot because that Count has been voluntarily dismissed.

## ORDER

In accordance with the foregoing, defendants' motion for partial summary judgment (Docket No. 14) is, with respect to Counts III and IV, **ALLOWED** and, with respect to Count V, **DENIED** as moot.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated September 13, 2005